**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **OTIS GRANT**<br>    *Plaintiff,* | **CIVIL ACTION NO.: 4:16-CV-3529** |
| **V.** | |
| **HARRIS COUNTY,**<br>    *Defendant.* | **JURY TRIAL** |

<u>**DEFENDANT HARRIS COUNTY'S OPPOSED EXPEDITED MOTION TO COMPEL
DISCLOSURE UNDER RULE 26(A) AND TO PRODUCE DOCUMENTS AND
RESPOND TO INTERROGATORIES UNDER RULE 37,
AND TO EXTEND CASE DEADLINES**</u>

Respectfully submitted,

OF COUNSEL:
VINCE RYAN
HARRIS COUNTY ATTORNEY

_____
SETH HOPKINS
Assistant County Attorney
Texas Bar No. 24032435
Federal (Southern District) No. 2043155
1019 Congress Plaza, 15th Floor
Houston, Texas  77002
(713) 274-5141 (telephone)
(713) 755-8924 (facsimile)
Seth.Hopkins@cao.hctx.net

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………….. ii

TABLE OF EXHIBITS…………………………………………………… iv

TABLE OF AUTHORITIES………………………………………………… v

I.      SUMMARY OF THE ARGUMENT…………………………………. 1

II.     BACKGROUND………………………………………………… 2

III.    NATURE AND STAGE OF THE PROCEEDING…………………………... 4

IV.     ISSUES TO BE RULED ON & LEGAL STANDARD
        UNDER FED. R. CIV. P. 34………………………………………….. 6

V.      GRANT SHOULD BE COMPELLED TO PRODUCE BASIC
        INFORMATION ABOUT HIS ALLEGED DISABILITY AND
        ACCOMMODATION REQUESTS AND SHOULD BE ORDERED TO
        RELEASE HIS MEDICAL AND INSURANCE RECORDS

        (Request for Production Nos. 2, 3, & 39 and Interrogatory No. 6)…………… 7

VI.     GRANT SHOULD BE COMPELLED TO PRODUCE
        COMMUNICATIONS RELATED TO ISSUES IN THIS CASE

        (Request for Production Nos. 4 & 31-39) ……………………………….. 9

VII.    GRANT SHOULD BE COMPELLED TO PRODUCE EVIDENCE
        DIRECTLY RELATED TO HIS CLAIMS IN THIS CASE

        (Request for Production Nos. 5-11 & 26-28)………………………….. 11

VIII.   GRANT SHOULD BE COMPELLED TO PRODUCE EVIDENCE
        RELATED TO HIS ALLEGED DISABILITIES

        (Request for Production Nos. 12, 13, 15, 16, 42 & Interrogatory No. 8)…….. 15

IX.     GRANT SHOULD BE COMPELLED TO PRODUCE RECORDS
        RELATED TO HIS ILLICIT USE OF CELL PHONES AND SOCIAL
        MEDIA AT WORK

        (Request for Production Nos. 29 & 30) ……………………………… 18

X.    GRANT SHOULD BE COMPELLED TO PROVIDE CONTACT INFORMATION AND ANTICIPATED TESTIMONY FOR HIS OWN WITNESSES

    (Request for Disclosure & Interrogatory No. 2)……………………………….    22

XI.    GRANT SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATED TO HIS REPRESENTATION THAT HE HAD A HANDICAP PLACARD ON HIS VEHICLE

    (Request for Production No. 43)………………………………………………    22

XII.    HARRIS COUNTY RESPECTFULLY REQUESTS THAT CASE DEADLINES BE EXTENDED BY APPROXIMATELY THREE MONTHS    23

XIII.    CONCLUSION & PRAYER………………………………………………….    24

## TABLE OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Grant's Responses to Harris County's First Set of Interrogatories and Request for Production. |
| Exhibit 2 | Grant's Responses to Harris County's Second Set of Request for Production. |
| Exhibit 3 | Harris County's Responses to Grant's Interrogatories and Request for Production. |
| Exhibit 4 | Harris County's proposed protective order to Grant. |
| Exhibit 5 | Grant's August 21, 2017 email to Harris County stating he would not agree to file confidential documents under seal, and would not respond to various discovery requests. |
| Exhibit 6 | Harris County's five-page August 7, 2017 letter to Grant regarding discovery deficiencies. |
| Exhibit 7 | Grant's August 18, 2017 email promising to provide tax records by August 18 and refusing to produce discovery on various topics, including the scope of Grant's alleged disability, because Grant's counsel does "not believe Mr. Grant's disability is in dispute." |
| Exhibit 8 | Harris County's August 21, 2017 emailing confirming that Grant promised to promptly produce medical and employment releases, a list of healthcare providers since 2008, a list of employers since his termination in 2013, and a Social Security authorization since 2010. |
| Exhibit 9 | Electronic Use Policy violated by Grant. |
| Exhibit 10 | *Ray v. Huntington Ingalls Incorporated*, No. 13-cv-23-HSO-RHW, 2013 WL 11325249 (S.D. Miss. Sept. 19, 2013). |
| Exhibit 11 | *Caputi v. Topper Realty Corp.*, No. 14-cv-2634(JFB)(SIL), 2015 WL 893663 (E.D.N.Y. Feb. 25, 2015). |

# TABLE OF AUTHORITIES

**Cases**

*Caputi v. Topper Realty Corp.*, No. 14-cv-2634(JFB)(SIL), 2015 WL 893663 (E.D.N.Y. Feb. 25, 2015)………………………………………...……………………………………………...…20

*Ray v. Huntington Ingalls Incorporated*, No. 13-cv-23-HSO-RHW, 2013 WL 11325249 (S.D. Miss. Sept. 19, 2013)…………………………...…………………………………19, 20

**Rules**

Fed. R. Civ. Proc. 26(a) ................................................................................. 1

Fed. R. Civ. Proc. 37………………………………………………………1, 5, 6

Fed. R. Civ. Proc. 37(a)(3)(A)………………………………………………….1

Fed. R. Civ. Proc. 37(a)(3)(B)………………………………………………….1

Fed. R. Civ. Proc. 34(b)(2)(B)………………………………………………….6

Fed. R. Civ. Proc. 34(b)(2)(C)………………………………………………….6

**DEFENDANT HARRIS COUNTY'S OPPOSED EXPEDITED MOTION TO COMPEL
DISCLOSURE UNDER RULE 26(A) AND TO PRODUCE DOCUMENTS AND
RESPOND TO INTERROGATORIES UNDER RULE 37,
AND TO EXTEND CASE DEADLINES**

Defendant Harris County respectfully submits this expedited motion, pursuant to Rule
37(a)(3)(A) and 37(a)(3)(B), to compel responses to disclosures and interrogatories, to produce
documents, and to extend case deadlines, and represents as follows:

**I.
SUMMARY OF THE ARGUMENT**

1.      As the case discovery deadline comes to an end, Plaintiff Otis Grant has not
provided contact information for any of his witnesses[1] or answered even the most basic questions
propounded in discovery.[2]  For example, despite being asked to do so in early June and agreeing
to do so in early August, plaintiff has not signed any medical or employment releases, produced
any tax forms, or provided any meaningful responses to Harris County's First and Second
Interrogatories and Request for Production. Plaintiff objected to nearly all of Harris County's
requests using cut-and-paste boilerplate language that often bore no relationship to the question
being asked.  Despite numerous email and telephone conversations, extensions, and promises to
supplement, plaintiff left Harris County without the documents needed to proceed with this case.

2.      Based on Grant's delays in responding to discovery, Harris County suggested the
parties petition the Court to reset the trial and pre-trial deadlines as they attempted to work out
their differences. Grant was steadfast in his refusal to make such an agreement.  He offered only

---

[1] *See* Doc. 11 at 3-4.  Harris County requested contact information and a summary of anticipated
testimony for the witnesses listed in Grant's disclosures.  The request was ignored.

[2] *See* Exhibit 1, Grant's responses to Harris County's First Set of Interrogatories and Request for
Production and Exhibit 2, Grant's responses to Harris County's Second Set of Request for
Production.

a short extension of the discovery and dispositive motion deadlines, which is reflected in the parties' Joint Motion to Extend Deadlines (Doc. 14).

3.      However, time continues to pass with Grant showing no signs of responding. The proposed joint Motion to Extend Deadlines pending before the Court (Doc. 14) may no longer be adequate.  It leaves only a month between the filing of the last dispositive motion brief and docket call, and because Grant has still not signed the releases Harris County sent four months ago, Harris County will not have time to subpoena and process the relevant records and propound any follow-up discovery that may be required.

4.      Harris County has been patient, particularly after Hurricane Harvey flooded Grant's home, and it is only with great reluctance that it seeks the Court's intervention. However, it is untenable that Plaintiff will both refuse to respond to discovery and refuse to agree to seek a meaningfully extension of case and trial deadlines. Harris County respectfully asks the Court to compel plaintiff to respond to past due disclosures and discovery and grant a three month trial extension so the parties have adequate time to prepare their cases.

## II.
## BACKGROUND

5.      Plaintiff Otis Grant was employed as a juvenile supervision officer with the Harris County Juvenile Detention Center ("Center") from August 8, 2005 until November 23, 2013.  A juvenile supervision officer's (JSO's) most important duty is to assure the safety of children in his care.  Because many of these children are at risk for harming themselves or others, state law mandates that JSOs conduct rounds of the cells housing the juveniles and visually inspect each cell at staggered intervals.  JSOs are required to conduct these mandatory rounds as frequently as every 10 to 15 minutes every hour of their shift.  The State of Texas not only requires these cell checks, but it also requires that each officer document what each child is doing during the cell

check.  These logs are maintained in accordance with state law and affect the Center's ability to retain its accreditation.

6.      The Center learned that Grant was falsifying his logs by claiming he walked around and looked into each cell, when he had not. He was counseled many times about the importance of maintaining accurate logs and keeping a professional demeanor so that he would be a good influence on the children in the facility; however, Grant responded to the counseling by becoming more recalcitrant.  The Center could no longer risk the children's safety on an officer who refused to supervise them and repeatedly falsified government documents to cover it up.  And after eight documented violations in 20 months, Grant was terminated.

7.      Grant was also involved in numerous disputes with co-workers.  He was insubordinate with supervisors, gossiped about management, walked off his post without telling anyone, and made unreasonable demands.  He made numerous baseless complaints against others that were never substantiated.

8.      Grant filed this suit, claiming he was terminated based on a disability. While his exact disability is a moving target, Grant generally claims he could not walk his rounds because of a foot condition related to his diabetes. At times, he claimed he was unable to work at all. At other times, he insisted he could work without accommodations. His lawsuit makes a third allegation—that he could only work with accommodations. However, it is unclear at what point he requested accommodations, what accommodations he requested, or why he needed them. Because of these, and other inconsistencies, the vague nature of Grant's claims, and his complex work history, it is crucial that Harris County be provided with adequate and meaningful discovery.

**III.**
**NATURE & STAGE OF THE PROCEEDING**

9.      Discovery ended <u>September 29, 2017</u>.  No witnesses have been deposed,[3] and the dispositive motion deadline is three weeks away, on <u>October 20, 2017</u>.  The parties filed an Agreed Motion for a short extension of the discovery deadlines until <u>October 28, 2017</u> and to move the dispositive deadlines over the holidays.  The Court has not ruled on the Agreed Motion, but as time passes without any meaningful discovery from Plaintiff, those dates are in doubt. (In addition, plaintiff's counsel stated that she is unavailable for depositions the first week of October, defense counsel has a trial the second week of October, and plaintiff has generally been unavailable due to his house flooding in Hurricane Harvey.)

10.      On <u>June 8, 2017</u>, Harris County propounded its First Request for Production and Interrogatories to Grant.[4]  These 28 requests and seven interrogatories were organized into logical categories: (1) disability questions, (2) case facts, (3) credentials and other employment, (4) other claims, (5) damages, (6) experts, and (7) general.  Grant objected to most of Harris County's requests, and the few documents he produced (only 356 pages) was essentially his redacted EEOC file.[5]  Plaintiff withheld even this meager production until <u>August 4, 2017</u>.

---

[3]  Harris County noticed Grant's deposition for <u>August 7, 2017</u>, but cancelled when it became apparent that plaintiff had not responded to enough discovery to proceed with the deposition. Harris County has since attempted to notice Grant's deposition even without adequate discovery, but Grant has been unavailable on the requested dates.  Harris County has attempted to work with Grant, particularly since his house flooded in Hurricane Harvey.

[4]  Exhibit 1.

[5]  Grant also produced audio and video files that he secretly took (against policy and from within a secure facility) of himself arguing with co-workers and supervisors and marching around the Center complaining about things such as clocks.

11.     In contrast, on <u>July 12, 2017</u>, Grant served Harris County with <u>60 requests for production and 19 interrogatories</u>.  Grant's requests far exceeded the bounds of discovery, yet Harris County produced 775 pages of records before they were even due and is continuing to supplement.  Harris County's 28 pages of written responses[6] refer Grant to specific and narrow Bates ranges so he can easily find precisely the documents in question.  Harris County explained the basis for each objection in great detail, identified which documents were withheld and the reasons why, and offered to produce even more documents once the parties sign a protective order.  (Without such an order, Harris County may not legally release confidential third-party information.) Grant was provided a standard protective order similar to those used in other cases,[7] but he will not sign it and has not submitted any proposed edits.[8]  Instead, Grant initially said Harris County should release confidential third party documents without any protection and "trust" that Grant would not place them into a public forum.  Grant now takes the position that confidential documents can be filed into a public record, without having to be filed under seal.

12.     On <u>August 21, 2017</u>, Harris County propounded a Second Set of Request for Production and Interrogatories with two additional interrogatories and 13 production requests.  Grant sought additional time—until <u>September 28</u>—to respond.  Harris County agreed to the extension based on Grant's representation that he would provide meaningful responses.  <u>Grant did not produce a single document</u>.

13.     Harris County repeatedly advised Grant in writing on <u>August 1, 2017</u>, <u>August 7, 2017</u>, <u>August 14, 2017</u>, and (after the storm) <u>September 27, 2017</u> that it would be forced to file a

---

[6]  Exhibit 3, Harris County's Responses to Grant's Interrogatories and Request for Production.

[7]  Exhibit 4, Harris County's proposed Agreed Protective Order, which Grant will not sign or make any redline amendments.

[8]  Exhibit 5, email from plaintiff's counsel dated August 21, 2017.  Plaintiff objected to the protective order but never provided any edits to the document. <u>Plaintiff specifically refuses to seal confidential documents, which renders the protective order meaningless</u>.

motion to compel. Harris County has made every effort to avoid Court intervention, but Grant has no intention of responding to even the most basic discovery. This has delayed the case and Harris County's ability to proceed at trial.

### IV.
### ISSUES TO BE RULED ON AND LEGAL STANDARD UNDER FED. R. CIV. P. 34

14.     On December 1, 2015, Federal Rule of Civil Procedure 34 was amended. Discovery objections must now (1) **state with specificity the grounds for objecting** and (2) **state whether any responsive materials are being withheld on the basis of that objection**. If a party intends to supplement, the party must state when he will complete the production. The relevant parts of Rule 34 now read:

> ***Rule 34(b)(2)(B) Responding to Each Item.*** For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.

> ***Rule 34(b)(2)(C) Objections.*** An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

15.     Despite these rules, most of Grant's responses contain boilerplate objections that are not specific to the requests being made, do not give reasons for the objections, do not indicate whether responsive materials are being withheld, and (for documents that plaintiff offers to supplement), do not indicate when the supplementation will occur. Some of Grant's objections were not even related to the questions being asked.

16.     The only specificity Grant attempted to provide in his responses to Harris County's First Set of Production was to occasionally refer Harris County to "***see bate-stamped***

documents P-000001-000356"—Grant's **entire** production.[9]   Grant produced ***absolutely no***

***documents*** in response to Harris County's Second Request for Production—even though Harris

County agreed to allow Grant an extension until the very last day of discovery to respond.

17.     On August 7, 2017, Harris County sent a five-page letter to plaintiff's counsel

explaining these concerns in great detail and requesting that Grant supplement.[10]   Grant

responded on August 14, 2017, with a short email.[11] The attorneys have communicated several

times since and have been unable to resolve their disputes. Harris County respectfully seeks an

order to compel responses to the discovery identified below.

## V.
## GRANT SHOULD BE COMPELLED TO PRODUCE BASIC INFORMATION ABOUT HIS ALLEGED DISABILITY AND ACCOMMODATION REQUESTS AND SHOULD BE ORDERED TO RELEASE HIS MEDICAL/INSURANCE RECORDS

### (Request for Production 2, 3, & 39 and Interrogatory No. 6)

18.     Medical records are some of the most basic documents in an Americans with

Disabilities Act case—particularly when an employee's claims differ from his physician's

diagnosis.  Grant's doctor asserted vaguely that Grant might need an occasional 15 minute break,

which Harris County provided.   Because Grant now exaggerates both his diagnosis and

accommodation needs, Harris County is entitled to a list of Grant's medical providers and

records.  This was requested on June 8, 2017:

> **REQUEST FOR PRODUCTION NO. 2:**   Please produce all medical records
> from all providers since you were diagnosed with any condition that you allege
> contributed to your disability.  If you do not possess these records, please list all
> medical providers and return a signed copy of the attached medical release form.

---

[9]  A few times, Grant referred to blocks of approximately half of his production.

[10]  *See* Exhibit 6, August 7, 2017 letter from Harris County to Grant outlining discovery deficiencies and requesting that he supplement.

[11]  *See* Exhibit 7, August 14, 2017 email from Grant attempting to defend some of the discovery deficiencies.  Grant never attempted to amend or supplement his responses.

19.     This response was due <u>July 8, 2017</u>.  Though Harris County agreed to limit the request to records after 2008, Grant produced nothing.  Grant then promised—both in writing and during a lengthy, documented telephone conference—that he would sign a medical release for records after 2008.[12]  Grant refused to honor his own promise.  This prompted Harris County to request that Grant sign a release to Grant's former insurer (Aetna) for an Explanation of Benefits from 2008-2013, which would list the names of the physicians he went to.  Grant will not sign that release either.

20.     Harris County also asked Grant to produce documents that identify his alleged disability and explain his physical limitations, and the accommodations he contends he needed under the ADA.  This is the most fundamental question in the case:

> **REQUEST FOR PRODUCTION NO. 3:**  Please produce all documents in your possession or control that identify your alleged disability and help to explain your limitations and the reason, nature, and scope of accommodations that you contend are required under the Americans with Disabilities Act.

21.     Grant objected to that request as well.  In a follow-up email on <u>August 14, 2017</u>, Grant's counsel asserted the request was irrelevant because she does "not believe Mr. Grant's disability is in dispute."[13] She also claimed Grant produced all documents in his possession.

22.     Harris County tried another way to gather information to understand the nature of Grant's alleged disability.  It asked:

> **REQUEST FOR PRODUCTION NO. 39:**  If not produced elsewhere, please produce all documents reflecting your attempts to mitigate your alleged disability while working at Harris County.  This should include prescriptions, receipts, or other documents related to medical or specialty devices or medications.

---

[12]  Grant agreed to sign a medical release from 2008 to present, but he has not done so. *See* Exhibit 8, August 21, 2017 email from Harris County confirming counsel's telephone agreement and providing releases for Grant to sign.

[13]  Exhibit 7.

23.     Grant made a boilerplate objection that was nearly identical to his objections in Request for Production Nos. 29-43.  Without producing a single document or even identifying the advice or medication he received, Grant said only that he followed his doctor's advice and took medication.

24.     To clear up any confusion, Harris County sent Interrogatory No. 6:

**INTERROGATORY NO. 6:**
Please identify, in detail, the nature of your disability, the exact accommodations that you requested, the dates on which you requested these accommodations, the person to whom you directed your request, and the response you received. Please include a list of dates and occasions in which you assert these requests for accommodations were denied and how you propose that you should have been accommodated.

25.     Grant objected to the interrogatory but did provide some responses.  However, he never indicated the person to whom he directed his accommodation request, the response he received, and—most importantly—the dates and occasions in which he asserts the requests were denied and how he proposed [at the time] that he should have been accommodated.  He also reserved "*the right to add facts as I recall them*."[14]

26.     Grant's disability and his accommodation requests are the most important part of this case, and they should not be a moving target.  Grant should be compelled to respond or be prohibited from introducing any additional evidence of his alleged disability or accommodation request—other than those already produced.

## VI.
## GRANT SHOULD BE COMPELLED TO PRODUCE COMMUNICATIONS RELATED TO ISSUES IN THIS CASE

### (Request for Production 4 & 31-39)

---

[14]  Exhibit 1 at 16.

27.     Grant's communications with co-workers and witnesses are an essential part of this case.  Grant complained frequently to co-workers, admits engaging in texts and/or social media conversations with others about his alleged retaliation, and even showed up at Harris County's facilities after his termination and attempted to communicate with employees about this case.  Harris County is entitled to know about these communications.

28.     On June 8, 2017, Harris County propounded the following request:

**REQUEST FOR PRODUCTION NO. 4:**   Please produce copies of all communication (including texts, emails, and other electronic communication) between you and any current or former employee of Harris County.

29.     Grant refused to produce any documents.  When Harris County offered to narrow the scope of the request to the period immediately before and after his termination and to narrow the topics, Grant still refused to produce anything.  He objected that the request was "*not relevant to the claims and defenses at issue in this case.*" Curiously, he offered to sign a ***medical authorization***, which has nothing to do with the request.  This nonsensical objection illustrated that Grant never even read—much less intended to respond to—Harris County's discovery.[15] Even worse, when the time came to actually sign a medical authorization, he refused.

30.     Grant's boilerplate objections never indicated what documents he searched for, what documents were withheld, or what documents he was willing to produce.  There is no indication that Grant even **attempted** to look at his personal email, social media, or cell phone for responsive documents.

31.     At a minimum, Harris County is entitled to copies of Grant's personal emails, texts, and phone records for communications with Harris County employees and Grant's own

---

[15]   Grant made *identical* objections to several requests that had nothing to do with Grant's medical condition.  Only after Harris County pointed out the absurdity of this did Grant withdraw the sentence about a medical authorization.  However, he never signed the promised medical authorization.

witnesses about matters related to his job, alleged disability, accommodation requests, and disputes at work in 2011 to 2013—the period Grant claims he was discriminated against.

32.     Request for Production Nos. 31-39[16] makes Harris County's requests more clear and narrow by seeking communications with Grant's own witnesses related to his job during a two year period.  Grant refused to produce any of these communications and/or claimed he had none.   Grant's assertion is particularly outrageous because he claims not to have any communications ***with his own wife***.

## VII.
## GRANT SHOULD BE COMPELLED TO PRODUCE EVIDENCE DIRECTLY RELATED TO HIS CLAIMS IN THIS CASE

### (Request for Production 5-11 & 26-28)

33.     Grant similarly refused to respond to other requests directly related to claims in this case.  First, Harris County sought the most basic documents possible—Grant's own accommodation requests made in accordance with his obligations under the ADA:

> **REQUEST FOR PRODUCTION NO. 5:** Please produce all evidence of requests for accommodation you allegedly made to Harris County or any of its employees, and the responses you received.

> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

34.     The request is not overly broad—it is clear, narrow, and direct.  It is not irrelevant.  It is not vague.  It is not ambiguous.  It is not unspecific.  It does have a limitation—it

---

[16]  *See* Exhibit 2, Harris County's Second Request for Production.

seeks only documents to support Grant's *own* claim that he sought accommodations from Harris County, and the responses he received. If Grant does not have documents to support his accommodation requests, he must be required to admit that. He cannot avoid his discovery obligations because he does not like the questions being asked.  He must also identify the specific Bates numbers of the documents he relies on.  Instead, he once again made an irrelevant and bizarre offer to sign a medical release.

35.    Next, Harris County sought documents related to Grant's claim that he was harassed and retaliated against and "strictly scrutinized." It is fundamental that Grant identify and produce evidence to support these serious allegations.   Instead, Grant made the *same* nonsensical response:

> **REQUEST FOR PRODUCTION NO. 6:**    Please produce all evidence to support your claim in Paragraph 12 of your Petition that Anthony Samuel or others "began to retaliate and harass" you and "strictly scrutinized" you "on almost a daily basis."  This should include, but is not limited to, the Facebook post referenced in Paragraph 13.

> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

36.    The request is not overly broad—it is clear, narrow, and direct.  It is not irrelevant.  It is not vague.  It is not ambiguous.  It is not unspecific.  It does have a limitation—it seeks only documents to support Grant's *own* claim in a specific paragraph of his *own* complaint.  Grant's offer to provide a medical authorization in this (and many other) requests demonstrates that Grant never took these questions seriously.  His offer to

supplement rings hollow, since there is no indication that he ever intended to look for these documents.  Finally, his referral to his ***entire*** production set is disingenuous, at best. This is not only nonresponsive, but sanctionable.

37.    These tactics continue.  Harris County's Request No. 7 seeks documents to support Grant's claim in Paragraph 15 of his Complaint that he was subjected to daily scrutiny.  Grant repeated—***word-for-word***—the same nonsensical objection:

> **REQUEST FOR PRODUCTION NO. 7:** Please produce all evidence to support your claim in Paragraph 15 of your Petition that you were subjected to "[w]rite-up and daily scrutiny."
>
> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

38.    This request is not overly broad—it is clear, narrow, and direct.  It is not irrelevant. It is not vague.  It is not ambiguous.  It is not unspecific.  It does have a limitation—it seeks only documents to support Grant's ***own*** claim in a specific paragraph of his ***own*** complaint.  This is another sanctionable response.

39.    Grant changed his tactics for the next four questions.  In Request for Production Nos. 8, 9, 10, and 11, Harris County asked Grant to produce evidence to support his claims in Paragraphs 16, 12, and 21-24 of his Complaint.  This time, Grant did not object.  Instead, he simply referred Harris County to his ***entire production set***.  Grant should be required to narrow the range of documents supporting each of his claims.

40.     Harris County's Request for Production No. 26 sought Grant's evidence to support his claim of disparate treatment by Harris County.  This, of course, is a central issue in the case.   Grant responded with the ***identical*** objection that he made to the first group of requests—even offering to sign a medical release:

> **REQUEST FOR PRODUCTION NO. 26:** Please produce all evidence supporting any claim you have for disparate treatment by Harris County.
>
> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

41.     In Request for Production No. 27, Harris County made a "catch-all" request for any other documents in Grant's possession concerning his former employment with Harris County.  This is important because Grant had years of workplace conflicts, and his complaint references changes in how he was treated over nearly a decade of employment. At a minimum, this might require that Grant review his emails, cell phone records, files, or other sources of information.  Instead, Grant simply repeated the same objection—including the offer to provide medical records:

> **REQUEST FOR PRODUCTION NO. 27:** Please produce all documents in your possession or control concerning your former employment with Harris County that have not been produced elsewhere.
>
> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers

if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

42.    In Request for Production No. 28, Harris County sought non-privileged documents in Grant's possession or control "concerning this lawsuit" that have not been produced elsewhere.  Not surprisingly, Grant copied and pasted the same objection—including the same offer to provide medical records:

> **REQUEST FOR PRODUCTION NO. 28:** Please produce all non-privileged documents in your possession or control concerning this lawsuit that have not been produced elsewhere.
>
> **RESPONSE:** Grant objects that this request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grant responds: This information was provided to Defendant during Grant's employment. Grant will provide a limited medical authorization for Defendant to request this information from his medical providers if Defendant provides the form. He will also supplement if this information becomes available. See bate-stamped documents P-000001-000356.

43.    Grant should be compelled to respond to these requests, or prevented from introducing any evidence on these topics.

## VIII.
## GRANT SHOULD BE COMPELLED TO PRODUCE EVIDENCE RELATED TO HIS ALLEGED DAMAGES

### (Request for Production 12, 13, 15-16 & 42 and Interrogatory No. 8)

44.    Grant contends he is entitled to $1 million in punitive damages and $300,000 in compensatory damages, in part because he lost wages as a result of his termination. He further seeks reinstatement to his former position.  Grant has publically suggested that he wanted to leave his industry, and Harris County is entitled to understand what Grant has done to mitigate his damages and what professional and educational credentials he sought after his termination.

45.     Harris County is also entitled to know what positions Grant applied for, and whether those positions required that he engage in job activities that he claimed he could not do at Harris County.   Accordingly, Grant has made his subsequent educational records and job applications relevant to this case.   It is also highly relevant to know whether Grant had the same type of problems in his new job as he did at Harris County.   Harris County made the following requests (which it offered to modify) and received the following responses:

> **REQUEST FOR PRODUCTION NO. 12:** Please produce all documents reflecting your professional credentials. This includes, but is not limited to, your resume, transcripts, certificates of training, military record, and other documents that demonstrate your knowledge, training, employability, and value of your labor.
>
> **RESPONSE:** Grant objects that this request is not relevant to any claims or defenses in this case. Further he objects that the request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case.
>
> **REQUEST FOR PRODUCTION NO. 13:** Please produce all communications with all employers or prospective employers since 2007. This includes, but is not limited to, employment applications, W2s, pay stubs, and documents reflecting evaluations of your work, such as employment reviews, commendations, reprimands, or terminations.
>
> **RESPONSE:** Grant objects that this request is not relevant to any claims in this case. Further he objects that the request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. Subject to the objections, Grants will supplement with documents.

46.     These requests are highly relevant, and they are not overly broad, vague, ambiguous, or unspecific.   There are clear limits to the requests, and Harris County offered to provide further limits to satisfy any reasonable concerns Grant might have.   Still, Grant has produced nothing.

47.     Harris County requested information about Grant's alleged damages with a different question:

> **REQUEST FOR PRODUCTION NO. 42:**   Please produce a complete job description for each job you applied for (whether you were hired or not) since leaving Harris County in 2013.  This includes, but is not limited to, your present employment.  If you applied for any position for which you do not have a job description, please identify the position and date you applied.

48.     Grant would certainly have applied for jobs electronically, but he claimed he had no documents and ignored the last part of the question asking him to identify the position and dates he applied.  He then offered to supplement, though it is apparent he had no intention of doing so.

49.     Harris County also asked the basic question of whether Grant (or any of his companies) have been involved in other lawsuits:

> **REQUEST FOR PRODUCTION NO. 15:** Please produce all documents related to any other lawsuit or claim in which you and/or any entity in which you own at least a 20% interest are, or have been, a party in the last 10 years. This should include, at a minimum, documents indicating the full style of the lawsuit(s) and transcripts of any deposition or trial testimony.
>
> **RESPONSE:** Grant objects that this request is not relevant to any claims in this case. Further he objects that the request is overly broad to the extent it seeks information beyond what is relevant in this case. Grant objects that this request is vague, ambiguous and unspecific, being without limitation which would require a response to that which is not relevant to the claims and defenses at issue in this case. [17]

50.     Curiously, Grant asked the *same* question of Harris County in his Request for Production No. 9.  Harris County objected, but it also produced documents in its possession. Harris County also propounded <u>Interrogatory No. 8</u>,[18] which requests that Grant list the captions

---

[17] *See* Exhibit 1.
[18] *See* Exhibit 2.

of lawsuits in which he was involved.  Grant partially answered, but continued his objections. He should be required to respond to all of these requests.

51.     Grant recognized that his income tax returns are relevant to his damages, and he promised to produce them, as requested in <u>Request for Production No. 16</u>.  They were due <u>July 8, 2017</u>.  When pressed to produce them, Grant's counsel promised them by <u>Friday, August 18, 2017</u>.[19]  **Grant has <u>still</u> not produced them.**

## IX.
## GRANT SHOULD BE COMPELLED TO PRODUCE RECORDS RELATED TO HIS ILLICIT USE OF CELL PHONES AND SOCIAL MEDIA AT WORK

### (Request for Production 29 & 30)

52.     Grant was terminated after surveillance footage showed him playing on his phone, with his feet propped up, as he falsified observation logs by claiming he was walking around and checking on the children in his care. In establishing that Grant's termination was not pre-textual, Harris County is entitled to show the frequency and scope with which he used his phone at work and public and private communications he made while at work.

53.     Detention officers are not permitted to use personal electronic devices on duty at all—much less while they are supposed to be walking their rounds.  That policy is clear:

> Staff found in possession of prohibited electronic devices will be subject to disciplinary actions up to and including termination.  Unauthorized video/audio recordings or imagines found in the possession of or distributed by staff may be subject to disciplinary actions up to and including termination.[20]

54.     Grant was aware of this policy.  In fact, he ***filed a grievance*** against his own supervisor for using an electronic device and social media at work.  <u>Grant's complaint resulted in the supervisor—a valued employee with more than 10 years' experience—being terminated</u>.

---

[19]  Exhibit 7.
[20]  Exhibit 9, Electronic Use Policy.

55.     Grant produced evidence making it clear that *he* used at least two prohibited electronic devices[21] to secretly record hours of audio and video of coworkers and supervisors without their knowledge or permission.  Grant's secret footage not only includes innocent third parties, but security features and other sensitive areas in a secure detention facility.  It is highly likely that Grant took more illicit recordings and made texts, posts, and other electronic communications that he has not admitted to. Harris County is entitled to additional discovery of his cell phone records to establish the extent of Grant's work place phone usage.

56.     These records are also important because they will likely reveal to whom Grant communicated frequently while at work about topics related to his alleged disability, his use (and possibly abuse) of time off for medical reasons, and other claims that are central to this case. There is no doubt that Grant engaged in these communications, and he admits on one of his illicit recordings that he texted and/or sent Facebook messages at work regarding a Facebook photo of him with his feet propped up on a table while on duty.  Grant has made his cell phones a central issue in this case.

57.     Though Grant worked for Harris County from 2005 to 2013 and alleges he was discriminated and retaliated against from at least 2011 to 2013, Harris County's Request for Production No. 29 seeks cell phone records from only 2012 and 2013[22]:

> **REQUEST FOR PRODUCTION NO. 29:**   Please produce all itemized cell phone billing records for each phone you had during the years 2012 and 2013. You may mark these records "Confidential," as provided by the parties' protective order, or redact the phone numbers of calls made or received outside your normal work hours.  You may not redact evidence of any communications with persons listed as witnesses in your disclosures or coworkers who you allege discriminated or retaliated against you, or who have information relevant to this case. If you do

---

[21]   At one point, Grant used an electronic device to take a video of another electronic device.

[22]   Grant was terminated at the end of November, 2013, but it is important to see his billing records for usage through the end of December, 2013.  That usage in the month after his termination will be important to compare with his usage on the job.

not have these records, please identify all cell phone service providers, phone numbers, and account numbers and sign the attached release for these records or provide a time when you and your attorney are available to allow defendant to log into your account and review these records.

58.     Employees are frequently compelled to produce much more onerous phone records for far less compelling reasons.  In the case of *Ray v. Huntington Ingalls Incorporated*, No. 13-cv-23-HSO-RHW, 2013 WL 11325249 (S.D. Miss. Sept. 19, 2013),[23] Ray filed an employment action.  Huntington Ingalls contended that Ray was a bad employee who frequently used his cell phone at work and filed a motion seeking to compel Ray to produce five years of cell phone billing records.  The Court held:

> Plaintiff's billing records are relevant to the extent that they could confirm Plaintiff's cell phone use during business hours or could be used for impeachment purposes if Plaintiff denies that he used his cell phone during work hours. Accordingly, Plaintiff is to produce cell phone records from the last five years, subject to redactions for any phone numbers on Plaintiff's account that were not used by Plaintiff or for any calls that were outside of Plaintiff's work hours.  If, as Plaintiff contends, he does not possess all of these billing records, then he also is to provide Defendant with the names of cell phone carriers and cell phone numbers that he used in the last five years.  Any billing records that are produced should be done so pursuant to either a confidentiality agreement or protective order.[24]

59.     In the case of *Caputi v. Topper Realty Corp.*, No. 14-cv-2634(JFB)(SIL), 2015 WL 893663 (E.D.N.Y. Feb. 25, 2015)[25] an administrative assistant sued her employer under the Fair Labor Standards Act after it allegedly required her to work "many more" than 48 hours per week without a lunch break, but paid her for only 40 hours per week.  The employer sought debit card and ATM records to prove she took meal breaks and cell phone records to show she made non-work-related phone calls while at work. The Court analyzed similar cases and determined

---

[23]  *See* Exhibit 10.

[24]  *Id.* (emphasis added).

[25]  *See* Exhibit 11.

that while it was too burdensome to require her to produce records from her entire work history, she was ordered to produce a representative sample of two years of cell phone records. *Id.*

60.     Harris County seeks only two years of phone records (out of an eight year employment history) for the very reason other courts have compelled. Harris County has even offered Grant three ways to comply with this request—to provide phone billing records, to offer a time and place to allow an online inspection of his account, or to sign a records release, which was provided.   Grant can mark these documents as "Confidential" under Harris County's proposed protective order.[26]   Grant should be compelled to produce these records.

61.     Harris County also seeks limited evidence of social media posts Grant made.  As noted, Grant made Facebook the central theme in his retaliation claim, and he should be required to disclose his own public posts during the most relevant two year period:

> **REQUEST FOR PRODUCTION NO. 30:** Please produce a copy of all public social media posts (including Facebook, Twitter, and LinkedIn) during the last 12 months of your employment with Harris County and the first 12 months after your employment with Harris County.  This should include screen shots of all posts, pictures, and "check ins" you made.  If you no longer have access to these records, please identify all social media accounts that you had during this time and the account names and associated email addresses.  Because social media records are public, there should be no privacy concerns regarding this request.

62.     Another reason Grant should produce his social media posts is that they include photos directly related to his disability, physical condition, activities on days he missed work because of his alleged disability.  They may also include posts and messages sent while using his cell phone at work. Even a cursory review of the portions of Grant's social media accounts available to his non-friends reveals efforts he made to seek other employment.

---

[26] *See* Exhibit 4, Harris County's Proposed Protective Order.

## X.
## GRANT SHOULD BE COMPELLED TO PROVIDE CONTACT INFORMATION AND ANTICIPATED TESTIMONY FOR HIS OWN WITNESSES

### (Initial Disclosures (Doc. 11) & Interrogatory No. 2)

63.     The parties in this case had a duty to disclose the names, addresses, and subject matter of those with facts that may be relevant to this case.  Grant's disclosures fail to identify any witness addresses, phone numbers, or other contact information—including Grant's own wife.  Further, his disclosures provide no real information about the subject matter of the witnesses' knowledge.  (*See, e.g.,* where Grant states that James Reddish, Hugo Inwufor, and Lee Harris only "has knowledge of facts and allegations included in Plaintiff's Amended Complaint."  Doc. 11 at 3-4.)

64.     To help remind Grant of his disclosure duties, Harris County propounded Interrogatory No. 2, which asked Grant to identify witnesses with factual information about the case and "provide a brief statement of each witness's knowledge" and identify which witnesses will be called to trial.  Grant provided no answer, except to refer Harris County to his deficient disclosures.  Grant should be required to supplement his disclosures and respond to Interrogatory No. 2 in a meaningful way.

## XI.
## GRANT SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATED TO HIS REPRESENTATION THAT HE HAD A HANDICAP PLACARD ON HIS VEHICLE

65.     Grant produced an audio tape that he illegally recorded in which he emphatically told his supervisor that he was issued (presumably by the State of Texas) a handicap placard for his vehicle.  Specifically, he said: "I have a handicap placard.  I'm the only one with a handicap placard that's down there."  Grant made this representation in order to be able to walk away

from his shift one night and go home, leaving children unguarded.  Despite being asked to do so, Grant never followed up with the appropriate personnel so that he could be accommodated.

66.     Clearly, Grant's claim to have a state-issued handicap placard is a fact directly related to allegation that he was disabled, could not walk, and needed accommodations.  It is highly relevant for Grant to produce the supporting documents used to obtain that official handicap placard.  Alternatively, if Grant did not have a handicap placard at the time he claimed he did, then Grant misrepresented his disability, which is a fact directly related to his credibility.  Harris County propounded the following request:

> **REQUEST FOR PRODUCTION NO. 43:**  Please produce all documents related to the handicap placards you refer to in your audio and video recordings.

> **RESPONSE:**  Plaintiff objects that this request is nonsensical.  Plaintiff does not understand this request and therefore cannot respond to this request.F [sic]

67.     Grant's response makes this even more relevant, because he is denying his own words in a recording he deliberately made and produced about the very subject matter of this lawsuit.  If Grant was dishonest in that tape, it is important that he admit he was never issued a handicapped placard and misrepresented his alleged disability to Harris County. Grant cannot simply call the request "nonsensical" and dismiss the request simply because he was caught being untruthful on his own secret tape.

## XII.
## HARRIS COUNTY RESPECTFULLY REQUESTS THAT CASE DEADLINES BE EXTENDED BY APPROXIMATELY THREE MONTHS

68.     Harris County diligently sought discovery and depositions from plaintiff and has been sensitive to Grant losing his home in the recent floods.  However, Grant never had any intention of responding to discovery in good faith, and this has prejudiced Harris County in its ability to defend its case. Harris County respectfully requests a three month extension of the trial

setting and pretrial deadlines.  The current trial setting is the original setting, and Harris County's request for an extension is made in good faith.

**XIII**
**CONCLUSION AND PRAYER FOR RELIEF**

For the reasons stated above, Harris County respectfully asks the Court to compel Grant to provide complete answers to the following discovery requests:

(1) Request for Production Nos. 2-13, 15-16, 26-39 & 42-43;

(2) Interrogatory Nos. 2, 6, & 8; and

(3) Plaintiff's Initial Disclosures (Doc. 11).

Harris County further requests that the trial date and corresponding deadlines be extended by approximately three months due in part to the effects of Hurricane Harvey and to allow the parties the opportunity to complete discovery.

Respectfully submitted,

OF COUNSEL:
VINCE RYAN
HARRIS COUNTY ATTORNEY

_Seth Hopkins_
_____

SETH HOPKINS
Assistant County Attorney
Texas Bar No. 24032435
Federal (Southern District) No. 2043155
1019 Congress Plaza, 15th Floor
Houston, Texas  77002
(713) 274-5141 (telephone)
(713) 755-8924 (facsimile)
Seth.Hopkins@cao.hctx.net

## CERTIFICATE OF SERVICE

I certify that on the 30th day of September, 2017, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record:

**Attorney for Plaintiff**
Victoria Plante-Northington
Plante Law Firm, P.C.
5177 Richmond Avenue, Ste. 1140
Houston, Texas  77056
Fax: (713) 513-5176
Email: Victoria@plantelawfirm.com

_____
Seth Hopkins

## CERTIFICATE OF CONFERENCE

I certify that counsel for the parties have conferred in good faith but are unable to reach an agreement as to discovery.  These conferences took place between counsel for plaintiff, Victoria Plante-Northington and counsel for defendant, Seth Hopkins, by email on August 7, 2017, August 14, 2017, August 21, 2017, September 27, 2017, and September 28, 2017 and several times by telephone.

_____
Seth Hopkins

25