KeyCite Yellow Flag - Negative Treatment
Distinguished by Gonzalez v. Allied Concrete Industries, Inc., E.D.N.Y., August 23, 2016

2015 WL 893663
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Doreen CAPUTI, Plaintiff,
v.
TOPPER REALTY CORP., and Brian Topper, Marilyn Topper, and Sharon Topper, in their individual and professional capacities, Defendants.

No. 14–cv–2634(

JFB
)(
SIL
).
|
Signed Feb. 25, 2015.

**Attorneys and Law Firms**

Alexander T. Coleman, Alexandra Lee Robins, Michael J. Borrelli, Samuel Veytsman, Mindy L. Kallus, Borrelli & Associates PLLC, Great Neck, NY, for Plaintiff.

Lisa Marie Griffith, William H. Ng, Littler Mendelson P.C., Melville, NY, for Defendants.

**ORDER**

LOCKE, United States Magistrate Judge.

*1 Before the Court in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action is a letter motion, DE [26], by Defendants Topper Realty Corp., Brian Topper, Marilyn Topper, and Sharon Topper (collectively, "Defendants") seeking to compel discovery (the "Motion to Compel"). After Plaintiff Doreen Caputi ("Plaintiff") submitted a letter in opposition, DE [27], Defendants filed a second letter motion, DE [28], also presently before the Court, to strike Plaintiff's opposition (the "Motion to Strike") on the grounds that it was submitted late and exceeds the page limit established by the Court's Individual Rules. Plaintiff also opposed the Motion to Strike.

**I. Background**
The following relevant factual assertions are drawn from the Complaint ("Compl."), DE [1]. Plaintiff was employed as an administrative assistant in Defendants' real estate company from February 2004 to November 22, 2013 (the "Relevant Time Period"). *See* Compl. ¶¶ 12, 14. During the Relevant Time Period, Plaintiff "worked six days each week, in shifts of eight hours per day, from approximately 9:00 a.m. to 5:00 p.m., Monday through Saturday." *Id.* ¶ 16. "Defendants did not permit [Plaintiff] an uninterrupted lunch break during the work day. Thus, her regularly-scheduled workweek was forty-eight hours, although she worked many more." *Id.* ¶ 16. Defendants also "did not compensate Plaintiff at any rate of pay ... for any hours that Plaintiff worked per week in excess of forty." *Id.* ¶ 18. Based on these events, Plaintiff asserted claims against Defendants under the FLSA and NYLL. *See generally id.* ¶¶ 28–65. Defendants answered the Complaint, denying Plaintiff's operative allegations, on August 15, 2014, DE [12], and served Plaintiff with discovery demands on or about September 30, 2014. The Motion to Compel arises from a dispute among the parties as to the discoverability of certain categories of documents requested by Defendants. The Court held a hearing and entertained oral argument on the Motion to Compel and Motion to Strike on February 12, 2015.

**II. Legal Standard**
Plaintiff may discover relevant, non-privileged information which appears reasonably calculated to lead to the discovery of admissible evidence. *See* Fed.R.Civ.P. 26(b)(1).

**III. Discussion**
Defendants' Motion to Compel seeks the production of the following documents as they relate to the Relevant Time Period: (i) Plaintiff's full federal and New York State tax returns; (ii) Plaintiff's credit and debit card statements; (iii) Plaintiff's cell phone records; and (iv) Plaintiff's Facebook account information. *See* DE [26] at 2–3.

**A.** *Full Federal and State Tax Returns*
Defendants contend that Plaintiff's full tax returns are relevant to determine whether, during the Relevant Time

Period, "Plaintiff maintained other employment and earned income from any other source while employed by" Defendants. DE [26] at 3. At oral argument, Defendants' counsel stated that Defendants have knowledge that Plaintiff maintained another source of employment for at least part of the Relevant Time Period and, therefore, her tax returns are needed to defend against her claims of working overtime. It is, however, undisputed that Plaintiff has already produced her IRS Form W–2s that she received for the Relevant Time Period.

**\*2** The motion to compel production of Plaintiff's tax returns is denied. "Although income tax returns are not inherently privileged, courts are typically reluctant to compel their disclosure because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.' " *Uto v. Job Site Servs., Inc.,* 269 F.R.D. 209, 212 (E.D.N.Y.2010) (quoting *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979)). "To compel the disclosure of income tax returns, a two-part test must be satisfied: (1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not 'otherwise readily available.' " *Id.* (quoting *United States v. Bonanno Family of La Cosa Nostra,* 119 F.R.D. 625, 627 (E.D.N.Y.1988)). Here, Defendants have failed to satisfy this standard. Particularly in light of the fact that Plaintiff has disclosed her IRS Form W–2s for the Relevant Time Period, the Court discerns no other information in Plaintiff's tax returns that may be relevant to Defendants' contention that she maintained dual employment during that period. In addition, "there is no representation from [D]efendants that they have attempted to retrieve the information sought from [Plaintiff] through discovery of other documentary evidence such as financial records, or 'through the use of any other, less intrusive, discovery device.' " *Melendez v. Primavera Meats, Inc.,* 270 F.R.D. 143, 145 (E.D.N.Y.2010) (quoting *Carmody v. Vill. of Rockville Ctr.,* CV–05–4907, 2007 U.S. Dist. LEXIS 50933 (E.D.N.Y. July 13, 2007)); *see D'Arpa v. Runway Towing Corp.,* 12–CV–1120, 2012 U.S. Dist. LEXIS 175452, at \*9 (E.D.N.Y., Dec. 11, 2012) ("[T]he discovery of a plaintiff's tax returns in an FLSA case is generally not warranted as the information sought is at best only minimally relevant and can be more readily obtained from a less intrusive source, namely the defendant's own records (citing *Melendez v. Primavera Meats, Inc.,* 270 F.R.D. 143, 144–45 (E.D.N.Y.2010)* (denying motion to compel production of tax returns to identify plaintiff's "other employers," where defendant failed to utilize less intrusive discovery devices for the same information)). Accordingly, the Motion to Compel is denied with respect to Plaintiff's full federal and State tax returns. However, Plaintiff shall produce any IRS Form W–2s not already produced and IRS Form 1099s she received during the Relevant Time Period.

### B. *Credit and Debit Card Statements*

Defendants next seek Plaintiff's credit and debit card statements relating to the Relevant Time Period. This information is sought:

> [T]o ascertain her personal activities and physical whereabouts during the workday in order to support Defendants' defenses that Plaintiff: (a) took uninterrupted meal breaks during her employment with [Defendants]; (b) did not 'always' work forty-eight (48) hours each week during her employment; and (c) worked six days a week from on or about June 2011 until on or about November 2013.

**\*3** DE [26] at 2–3.

Courts to have considered the discoverability of such records have generally concluded that they are relevant to substantiating (or disproving, as the case may be) a plaintiff's claim to have been in a particular location at a particular time. For example, in *Fracasse v. People's United Bank,* CVC 12–670, 2013 U.S. Dist. LEXIS 161363 (D.Conn., Nov. 13, 2013), the plaintiff claimed in deposition testimony that she was not paid overtime, despite regularly taking work home to complete over the weekends. *See id.* at \*2–\*3. The defendants sought to verify the plaintiff's claims by requesting, *inter alia,* "monthly statements for plaintiff's credit card(s) and debit card(s)." *Id.* at \*3. The Court found the request permissible, holding that "Defendant's requests to test plaintiff's testimony that she was working from home [during the relevant time period] are 'reasonably calculated to lead to the discovery of admissible evidence.' " *Id.* at \*6 (quoting Fed.R.Civ.P. 26(b)(1)).

Similarly, in *Van Schalkwyk v. Komori–Chambon USA, Inc.,* No. 3:05CV23–H, 2006 U.S. Dist. LEXIS 101321 (W.D.N.C., Feb. 1, 2006), the plaintiffs based their FLSA claim on self-reported timesheets for time spent on business trips or other work hours spent away from their supervisors and/or regular work stations. *See id.* at *3. The defendants sought to compel, *inter alia,* credit card statements for the time period in question, contending that they would establish "that the plaintiffs were not working on days [they] claimed to have worked[,] ... not traveling on days [they] claimed to have traveled, and ... not in the location[s] where [they] reported themselves to be." *Id.* at *4. The court granted the motion, holding that "the defendants' requests for identification and production of credit card statements are 'reasonably calculated to lead to the discovery of' whether the plaintiffs were in the locations on the dates that they reported in their time sheets and expense reports, evidence clearly admissible" as to the plaintiffs' FLSA claim. *Id.* at *6–*7.

In *Ricaldi v. U.S. Investigations Servs., Inc.,* CV 10–7388 (W.D.Cal., Aug. 4, 2011) (Unreported "Order Re: Defendant's Motion to Compel Discovery"), *see* DE [26] Ex. "A," an FLSA case involving alleged uninterrupted meal periods and unpaid overtime, the defendant moved to compel the plaintiff's production of, *inter alia,* "records of purchases made during the workday," claiming that such information "could show that plaintiff spent time during her workday on personal activities such as ... shopping, ... which would contradict plaintiff's assertions that it was not possible for her to take duty-free lunches." *Id.* at 2. The court "conclude[d] that the documents and information sought by defendant [we]re relevant to defendant's defense in th[e] action, and must be produced. The Court agree[d] with defendant that records showing multiple purchases during an extended time frame, or transactions from locations that require significant time to complete (such as a restaurant), ... could show that plaintiff had time during her workday for personal activities, and could thus disprove her allegations that she could never take 30 minutes off during the day for lunch." *Id.* at 5.

**\*4** The Court agrees that Plaintiff's credit and debit card statements are arguably relevant to constructing a complete picture of Plaintiff's whereabouts during the times she claims to have worked for Defendants. However, that relevance is outweighed by the intrusiveness of disclosing certain private information contained therein, including Plaintiff's personal spending habits. Moreover, Defendants have not sufficiently demonstrated that Plaintiff's credit and debit card statements will indicate the time of day of Plaintiff's purchases, and whether they were made in-person, away from her job, or electronically from her workstation. In this regard, the Court notes that during oral argument, the parties conceded that Plaintiff's job responsibilities often required her to work remotely from various locations. Given the ease with which transactions can be accomplished remotely on a laptop or smartphone, the Court is not convinced that Plaintiff's credit and debit card statements will provide sufficiently probative indicators of Plaintiff's activities and whereabouts to outweigh the risk of unnecessarily disclosing non-discoverable private information. Accordingly, the Motion to Compel is denied, in part, as to Plaintiff's credit card statements.

However, the motion is granted, in part, as to records of Plaintiff's ATM transactions. During oral argument, counsel for Defendants indicated that they expect witnesses to testify that Plaintiff attended prolonged lunches with friends and coworkers during the workweek and withdrew cash from ATMs for that purpose. Defendants are entitled to documentary evidence that may corroborate such anticipated testimony, to the extent it exists. Accordingly, Plaintiff shall produce a sampling of records of her ATM transactions for the period November 2011 to November 2013. So as to allay the privacy concerns described above, Plaintiff shall redact all information other than the date, time, and location of such transactions. Defendants may renew their application for the balance of Plaintiff's credit and debit card records based upon probative evidence uncovered from the sampling, if any.

**C. Cell Phone Records**

Defendants next seek records of Plaintiff's cell phone activity during the Relevant Time Period. Defendants contend that their request is designed to uncover patterns in Plaintiff's call history that belie her claims. Specifically, Defendants expect such records to show that Plaintiff engaged in telephone calls with non-work-related phone numbers on days and times that she claims to have worked for Defendants. Plaintiff objects to disclosing this information because, although she "probably made telephone calls" during the workday, her ability to have done so will not demonstrate whether "Defendants gave

her an uninterrupted break for which they would be entitled to deduct time from her pay." DE [27] at 4.

Decisional law from other jurisdictions is instructional on this point. In *Folger v. Medicalodges, Inc.,* CV 13–1203, 2013 U.S. Dist. LEXIS 169956 (D.Kan., Dec. 3, 2013), the district court granted the defendants' motion to compel the plaintiff's telephone records in a wage and hour case under the FLSA, finding that:

> **\*5** Plaintiff's claim that she worked hours off-the-clock and defendants' burden of rebuttal make at least minimally relevant any information which could possibly lead to admissible evidence that [Plaintiff] was not working during the claimed hours. Because the discovery sought appears relevant on its face, it is plaintiff's burden to establish a lack of relevance. Though plaintiff speculates that the telephone information might not provide a specific location or what persons may have been involved in the telephone call, these assumptions do not meet her burden.

*Id.* at \*9.

Similarly, in *Ricaldi, supra,* the defendant sought to compel the plaintiff's production of telephone records to "show that plaintiff spent time during her workday on personal activities such as engaging in social phone calls ..." DE [26] Ex. "A" at 2. As noted above, the court granted the motion, holding that "records showing ... lengthy telephone calls to non-work related numbers ... could show that plaintiff had time during her workday for personal activities, and could thus disprove her allegations that she could never take 30 minutes off during the day for lunch." *Id.* at 5.

More recently, in *Ritz v. Directory Publishing Solutions, Inc.,* CV 13–1236, 2014 U.S. Dist. LEXIS 66088 (E.D.Mo., May 14, 2014), the defendants in a collective action under the FLSA sought "records showing calls and texts from each Plaintiff's cell and home phones," contending that such records "were relevant to whether Plaintiffs engaged in personal activities while they claimed they were working for Defendants." *Id.* at \*2. The court there ordered that two plaintiffs from the class produce a sampling of such records to determine whether such records were probative for the defendant's defense. *See id.* When the sampling did, in fact, "demonstrate that the two plaintiffs engaged in significant personal activities during the time they alleged that they were working for Defendants," the court permitted the discovery, as initially requested, as to all plaintiffs in the class, stating that it "believe[d] that the records do show that the information sought may be relevant to Defendants' defense...." *Id.* at \*2–\*3.

The Court finds the measured approach in *Ritz* well-suited to balance Defendant's entitlement to relevant information against Plaintiff's concerns over the possibility of a "fishing expedition." Accordingly, the motion is granted, in part, and Plaintiff shall produce a sampling of her cell phone records covering the period November 2011 to November 2013. Defendants may renew their application for the balance of Plaintiff's cell phone records upon probative evidence uncovered from the sampling, if any.

**D.** *Facebook Account Information*

Finally, Defendants seek to compel Plaintiff to comply with the following discovery request:

> 22. Using the "Download Your Information," feature or other comparable technique, produce a complete history of your Facebook account, including without limitation all wall posts, status updates, pictures, messages, communications to or from your account, and any other content displayed at any time on your Facebook account.

**\*6** DE [26] at 2. Defendants subsequently tailored this request to cover only the time period from April 25, 2008 to November 22, 2013. *See id.*

Defendants apparently seek this information for two distinct purposes. First, Defendants seek to glean from Plaintiff's Facebook activity proof that she was engaged in non-work-related activities during those times she claimed to be working for Defendants. Consistent with this

purpose, Defendants attach a printout of a photograph Plaintiff published to Facebook on Wednesday, August 20, 2014, a workday, bearing the caption "Working 9:00 to 5:00." *See* DE [26] Ex. "E." In addition, Defendants claim that, despite Plaintiff's Facebook profile being "public," all of her Facebook activity during the year 2013 (her final year of employment with Defendants) has been deleted. Defendants therefore reason that "Plaintiff may have made similar [Facebook] posts during her employment with [Defendants] which may have been deleted from her account" and which may be relevant to the claims and defenses in this action.

On this point, the information Defendants seek is too broad to withstand scrutiny. Defendants seek "wall posts, status updates, pictures, messages, communications to or from [Plaintiff's] account, and any other content displayed" thereon during a five-and-a-half year period. Although such content is generally not recognized as privileged, Defendants have not made a sufficient predicate showing that this broad class of material is reasonably calculated to lead to the discovery of evidence establishing Plaintiff's whereabouts during the Relevant Time Period. *See Jewell v. Aaron's, Inc.,* CV 12–0563, 2013 U.S. Dist. LEXIS 102182, at *10–*11 (N.D.Ga., July 19, 2013) (in an FLSA collective action for, *inter alia,* alleged failure to pay employees for meal periods, denying discovery of social media information to show that employees were, in fact, taking lunch breaks).

For example, in *Palma v. Metro PCS Wireless, Inc.,* 8:13–cv–698–T–33MAP, 19 F.Supp.3d 1346, 1347–48 (M.D.Fla., Apr. 29, 2014), the defendants in a collective action under the FLSA moved to compel production of "all posts to Plaintiffs' social media accounts that relate[d] to 'any job descriptions or similar statements about th[e] case or job duties and responsibilities or hours worked which Plaintiff posted on LinkedIn, Facebook, or other social media sites," including "all private messages Plaintiffs sent from these sites." *Id.* As here, the defendants in *Palma* claimed that the plaintiffs "may have posted comments which contradict[ed] their testimony in the case about breaks and hours worked." *Id.* The court there denied the motion, holding that the request for social media records was too broad: "[Although] social media content is neither privileged nor protected by any right of privacy, ... Defendant 'does not have a generalized right to rummage at will through information that Plaintiff has limited from public view.' " *Id.* (citations omitted).

In addition, the court found that the burden associated with producing such records was not justified "when Defendant ha[d] nothing more than its 'hope that there might be something of relevance' in the social media posts." *Id.* (citation omitted).

*7 Here, unlike in *Palma,* Plaintiff appears not to have limited her Facebook activity from public view. Nevertheless, in support of their request, Defendants have offered little more than simply their "hope that there might [have] be[en] something of relevance" featured on Plaintiff's Facebook page over an expansive five-year period. Certainly, the print-out of a single photograph Plaintiff posted to Facebook on a workday in 2014, subsequent to the Relevant Time Period, cannot validate such a broad inspection. Accordingly, the motion is denied as to Plaintiff's Facebook account information to establish her whereabouts during the Relevant Time Period.

Second, Defendants seek to uncover Facebook activity demonstrating that Plaintiff did not, in fact, suffer emotional distress during the Relevant Time Period, as alleged in her Complaint.[1] Courts have permitted discovery of social media account information for this purpose. For example, in *Reid v. Ingerman Smith LLP,* CV 12–0307, 2012 U.S. Dist. LEXIS 182439 (E.D.N.Y., Dec. 27, 2012), the defendant sought documents relating to the non-public portions of plaintiff's social media accounts, arguing that, because the Plaintiff's public postings and photographs contained information that contradicted her claims of mental anguish, discovery into the non-public portions of her account should be permitted. *See id.* at *3. The court agreed that the plaintiff's "publicly available Facebook pages provide[d] probative evidence of her mental and emotional state, as well as reveale[d] the extent of activities in which she engage[d]." *Id.* at *3–*4. However, the court "decline[d] to require full disclosure of all materials contained" therein, because much of the information was irrelevant to the plaintiff's claims. *Id.* at *6 (noting that communications with non-parties relating to the plaintiff's birthday and Mother's Day "d[id] not reveal anything about plaintiff's emotional or physical state"). Instead, the Court tailored the relief granted to production of "social media communications and photographs 'that reveal, refer, or relate to any emotion, feeling, or mental state ... [and] that reveal, refer, or relate to the events that could reasonably [be] expected to produce a significant emotion, feeling, or mental state.'

" *Id.* at *7 (quoting *EEOC v. Simply Storage Mgmt.,* 270 F.R.D. 430, 435–36 (S.D.Ind., May 11, 2010)*).

Thereafter, in *Giacchetto v. Patchogue–Medford Union Free School District,* CV 11–6323, 293 F.R.D. 112 (E.D.N.Y.2013),* the court adopted a narrower approach, reasoning that an individual's "express[ion of] some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress." *Id.* at *115. Therefore, Plaintiff was only required to produce "any specific references [on social networking websites] to the emotional distress [the plaintiff] claim[ed] she suffered or treatment she received in connection with the incidents underlying her" complaint, as well as any postings that referred to a potential alternative source or cause of that distress. *Id.* at *116.

**\*8** Here, the Court agrees with the reasoning in *Giacchetto,* and declines to give Defendants complete access to Plaintiff's Facebook account for the purpose of identifying photographs, postings or private messages that may appear inconsistent with someone experiencing emotional distress. Rather, Defendants are entitled to a sampling of Plaintiff's Facebook activity for the period November 2011 to November 2013, limited to any "specific references to the emotional distress [Plaintiff] claims she suffered" in the Complaint, and any "treatment she received in connection [there]with." *Id.* at *116. Defendants may renew their application for the balance of Plaintiff's Facebook account information upon probative evidence uncovered from the sampling, if any. In addition, in mounting a defense, Defendants are entitled to any Facebook activity, for the same time period, that refers to an alternative source or cause of Plaintiff's alleged distress. *See id.* Accordingly, the motion is granted, in part, as to Plaintiff's Facebook account information to substantiate her claims of emotional distress. Plaintiff is also directed to preserve all of her Facebook activity for the duration of this litigation.

### E. *Motion to Strike*

The Court denies Defendants' Motion to Strike, DE [28]. While Plaintiff's opposition to Defendants' motion to compel was both late and longer than permitted by the Court's Individual Rules, the drastic relief Defendants seek under the circumstances is unwarranted. In the future, the parties are directed to meet and confer about scheduling and any other administrative issues before filing these types of motions.

### IV. Conclusion

Based on the foregoing, the Motion to Compel is granted in part and denied in part and the Motion to Strike is denied with prejudice. Plaintiff shall comply with this Order by producing the subject documents and information on or before March 16, **2015**, and the parties shall complete depositions on or before May 15, **2015**.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 893663

---

Footnotes

1   The Court notes that Defendants did not explicitly argue in the Motion to Compel that their request for Plaintiff's Facebook account information was aimed at disproving her claims of emotional distress. However, counsel for Defendants articulated that position during oral argument. Accordingly, the Court will address that point on the merits.

---

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.