IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **OTIS GRANT**<br>*Plaintiff,*<br><br>V.<br><br>**HARRIS COUNTY,**<br>*Defendant.* | **CIVIL ACTION NO.: 4:16-CV-3529**<br><br><br>**JURY TRIAL** |

## DEFENDANT HARRIS COUNTY'S MOTION TO RECONSIDER SUMMARY JUDGMENT

On January 29, 2018, Harris County filed a detailed summary judgment explaining how Plaintiff Otis Grant's testimony negated <u>every</u> element of his Americans with Disabilities Act claim (Doc. 69). The Court conditionally denied the Motion,[1] but ordered Plaintiff to respond by <u>February 23, 2018</u> with deposition citations to refute Harris County's Motion (Doc. 86) ("<u>Plaintiff's response to MOTION for Summary Judgment is due by next weekend</u>.")

<u>Plaintiff never responded</u>. The summary judgment on file establishes there is no genuine issue of material fact as to the issues identified in Doc. 69 and Doc. 69-1. Plaintiff has not—and cannot—refute his own testimony to create a triable issue. Accordingly, Harris County respectfully requests that the Court reconsider its denial of summary judgment.

### I.
### GRANT'S OWN TESTIMONY FORECLOSES HIS ADA CLAIM

To prove his case, Grant must establish: (1) He was substantially limited in his ability to walk, (2) he required and requested a reasonable accommodation, (3) he was denied a reasonable

---

[1] The Court's February 22, 2018 order found disputed issues of fact, but never identified those facts. Harris County respectfully suggests there are no material facts in dispute and provided the Court with a chart identifying undisputed testimony negating every element of Plaintiff's case. *See*, Doc. 69-1.

accommodation, and (4) he was otherwise able to perform the essential functions of his job. Instead of proving these elements, Grant's own testimony conclusively negates each of them, and his case should be dismissed.[2]

**1. Grant's case should be dismissed because he was not substantially limited in his ability to walk.**
(Motion for Summary Judgment, Doc. 69, at pages 7-11).

Grant claims he was discriminated against because he was unable to walk his rounds as a Juvenile Supervision Officer ("JSO") in 2013 due to alleged foot pain caused by diabetes. To survive summary judgment, Grant must first establish his foot pain "substantially limited" his ability to walk, as compared with an average person in society.

Grant only claims his feet would swell and hurt once or twice per month. He never saw a specialist—or even a doctor—about his feet, except to sporadically visit a sports medicine clinic in Katy. He designated no expert, had no surgery, never needed an orthopedic device to walk, never had prescription shoes, and never even wore basic compression socks.[3]  On August 28, 2012, a physician who treated Grant for an unrelated condition released him to work "without restrictions."[4]  Grant testified that for the last three years of his job at Harris County, he could "stand/walk throughout the majority of the shift" and engage in "frequent standing, stooping, bending, pulling, and walking."[5]

While at Harris County, Grant held a second job as a technician at Intracare Hospital, where he admits being able to spend 80-90% of the time standing, walking, and kneeling.[6] After leaving Harris County, Grant immediately took a job removing cable boxes from houses before

---

[2] Even summary judgment may not end Grant's litany of litigation. His counsel advised she will attempt to evade this Court's jurisdiction entirely and file a new lawsuit based on these facts.

[3] Doc. 69-5 (Motion for Summary Judgment ("MSJ") Exhibit 3, Grant deposition at 300:16-303:11).

[4] Doc. 69-27 (MSJ Exhibit 25, Grant medical release, at HC 1875).

[5] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 298:4-299:24).

[6] Doc. 69-26 (MSJ Exhibit 24, Grant Intracare records at HC 4141).

2

trying to find work as an offshore oilfield roustabout—one of the most strenuous jobs possible. He testified that he understood how demanding a roustabout's work is but could do the job because he was in "sound physical condition."[7]

Grant now spends his days walking around a football field at his new coaching job.[8] At night, Grant works a second job as a Home Depot freight associate walking on a cement floor and climbing up and down a ladder while lugging heavy paint cans and lumber to stock shelves. Grant walks "all night" from 9 p.m. to 5:30 a.m.[9] That would be hard on anyone's feet, and it establishes that Grant is not substantially impaired in his ability to walk. Grant admits that he never requested—or needed—an ADA accommodation from his other jobs and that he "did not walk to talk about" his foot pain to Home Depot.[10]

Grant's own physician concluded that Grant's foot pain was intermittent and temporary and would possibly occur "one or two times per month." Even during this day or two per month, Grant could walk, but should avoid doing so for a "*prolonged*" period.[11] By Grant's own admission, his condition was sporadic, temporary, and did not cause a significant and permanent impairment. The Fifth Circuit has repeatedly held that "temporary impairments are not sufficient to constitute 'disabilities' under the ADA." *Chollett v. Patterson-UTI Drilling Servs., LP, LLLP*, No. CIV.A. V-08-27, 2011 WL 4592378, at *5 (S.D. Tex. Sept. 30, 2011). *See also, E.E.O.C. v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 619 (5th Cir.2009). *See also, Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 36 (D.D.C. 2011).

---

[7] When asked about the inconsistency of claiming to be disabled while seeking such a physically demanding job, Grant never tried to explain himself. Instead, he avoided answering questions and angrily stated, "This has nothing to do with this case or pertaining to this case." Doc. 69-5 (MSJ Exhibit 3 at 307:12-310:20).

[8] Doc. 69-23 (MSJ Exhibit 21, Fort Bend Independent School District Records at HC 4014).

[9] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 337:21-338:24; 341:21-25; & 342:23-343:21).

[10] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 342:1-7). Grant never sought accommodations **at any job.**

[11] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 105:23-106:3, 102:16-19).

### 2. Grant's case should be dismissed because he never requested an accommodation and refused Harris County's attempts to engage in an interactive process.
(Motion for Summary Judgment, Doc. 69, at pages 11-13).

Assuming, *arguendo*, Grant was disabled, he admitted he did not need or request an accommodation.[12] Grant was already working the easiest shift at the Center, and employees with disabilities often asked to work his night shift as an accommodation because it required less physical activity than the day shifts.[13]

The Fifth Circuit places the burden on Grant to (1) timely contact Harris County, (2) clearly identify his disability, (3) explain his limitations, and (4) suggest a specific, reasonable accommodation. After notifying Harris County of his specific request, Grant was then required to engage in a "flexible, interactive discussion" with Harris County:

> The plaintiff bears the burden of requesting reasonable accommodations. The employee who needs an accommodation because of a disability has the responsibility of informing her employer. Where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. If the employee does so, the employer and the employee should engage in a flexible, interactive discussion to determine the appropriate accommodation.[14]

Grant did none of these things. He filed two confusing "exception reports" to justify his workplace misconduct, where he incidentally made a vague references to his feet hurting.[15] At

---

[12] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 178:13-17).

[13] Grant acknowledged his shift was easy because the children he supervised were generally asleep, and there was less walking required. Doc. 69-3, MSJ Exhibit 1; Doc. 69-5, Exhibit 3 at 184:1-186:1; Doc 69-18, MSJ Exhibit 16; and Doc. 69-40, MSJ Exhibit 48.

[14] *Bleiweiss v. Panduit Sales Corp.*, No. CIV.A. H-13-0080, 2015 WL 163819, at *9 (S.D. Tex. Jan. 13, 2015)(internal punctuation and citations omitted). *See also, Williamson v. Clarke Cty. Dep't of Human Res.*, 834 F. Supp. 2d 1310, 1316 (S.D. Ala. 2011). (Employee stated he was disabled but was unclear about what accommodation was needed and never submitted a written request). *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444-445 (5th Cir. 2017) (An employee must clearly link a specific medical disability with a specific request).

[15] The December 20, 2011 exception report is the first written notice Grant provided that he might need an accommodation. In that document, he was gaming for a vacation and stated a "Just and Fair Solution" to

least two members of management—Bianca Malveaux and Dr. Matthew Shelton—asked Grant if he needed a reasonable accommodation. On December 27, 2011, Grant told Malveaux he did not want an accommodation[16] and had no medical documentation of an accommodation need.[17]

A few months later, Grant asked his physician to write a note requesting 15-minute breaks to prop up his feet.[18] Rather than provide that note to Malveaux, he gave it to another employee, who forwarded it to Dr. Matthew Shelton. Grant admits the note was superfluous, since he was always allowed 15-minute breaks:[19]

> Q. **But you were getting 15-minute breaks**, weren't you, Mr. Grant, when you needed them?
>
> A. **Yes**.[20]

Grant's own doctor did not advocate any additional accommodation. In fact, Grant's physician criticized him for not walking enough and recommended that he walk more.[21] In 2013, Grant's doctor mentioned on an FMLA form that Grant should periodically have 15 minute

---

his grievance would be to have Friday and Saturday nights off. Doc. 69-28 (MSJ Exhibit 26 at HC 1052). Harris County responded to this within days, but Grant changed his mind about wanting these days off.

[16] Doc. 69-22 (MSJ Exhibit 20, Grant's Response to Request for Admission No. 4, admitting that on December 27, 2011, he told Malveaux he "did not want to make an ADA accommodation request." *See also,* Doc. 69-30 (MSJ Exhibit 28, Malveaux affidavit).

[17] Doc. 69-22 (MSJ Exhibit 20, Grant's Responses to Request for Admission Nos. 81-83).

[18] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 212:23-213:4). Grant's physician believed Grant walked continuously through the night.

[19] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 122:23-25). Grant complained only once about his breaks—a single incident on January 5, 2013, discussed in Doc. 69 at 22. During that incident, Grant abandoned children and walked off the job without telling anyone. Rather than reprimand him, the Center immediately instructed all administrators and supervisors to give Grant priority when he wanted a break. Grant never again complained about the lack of breaks *See also,* MSJ Exhibits 1, 16, & 48.

[20] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 122:23-25 & 221:21-23). Grant was also allowed to wear tennis shoes instead of standard uniform shoes as an additional accommodation. *Id.*, Grant deposition at 327:11-14.

[21] Doc. 69-22 (MSJ Exhibit 20, Grant's Response to Request for Admission No. 44) and Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 104:5-7).

breaks. Dr. Shelton sent Grant a follow-up letter on <u>July 11, 2013</u> to confirm Grant was still receiving sufficient breaks.[22] <u>Grant ignored the letter.</u>[23]

Dr. Shelton followed up again and met with Grant on <u>August 6, 2013</u> to confirm he did not have any further accommodation needs. Dr. Shelton repeatedly tried to engage in an interactive process, but Grant refused to discuss anything related to his alleged disability.[24] Grant secretly recorded a portion of this conversation, which was played at his deposition. After listening to the tape, Grant admitted he <u>did not ask Dr. Shelton for an accommodation</u>.[25]

On November 3, 2017, the Court compelled Grant to answer Interrogatory 6 and identify "<u>the exact accommodations that you requested</u>" and the dates and people to whom the requests were made (*See*, Doc. 34). Other than mentioning his FMLA (which is not part of this lawsuit) <u>Grant did not identify a single accommodation request</u>.[26]

Finally, Grant fully foreclosed on his case when he admitted at his deposition:

Q. What accommodation request did you want from Harris County related to your disability?

A. **<u>I can't recall at this time</u>**.[27]

Grant <u>still</u> has no idea what accommodation he wanted from Harris County. Because Grant never requested a reasonable accommodation, refused to engage in an interactive process, and has no idea of what accommodation he needed or wanted for his occasional foot pain, his case must be dismissed as a matter of law.

---

[22] Doc. 69-31 (MSJ Exhibit 29 at HC-211) and Doc. 69-18 (MSJ Exhibit 16, Affidavit of Dr. Shelton).

[23] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 119:6-8, 123:24-124:5, 111:18-24 & 112:15-18).

[24] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 145:22-147:1) and Doc. 69-18 (MSJ Exhibit 16, Shelton affidavit).

[25] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 140:3-12, 342:13-15) and Doc. 69-18 (MSJ Exhibit 16).

[26] Doc. 69-32 (MSJ Exhibit 30, "Plaintiff's Answers to Defendant's Interrogatories After Motion to Compel Order" at No. 6).

[27] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 89:6-8). *See also,* Doc. 69-20 (MSJ Exhibit 18, Jones-Robinson deposition at 129:5-7).

### 3. Grant's case should be dismissed because he could not perform the essential functions of his job.
(Motion for Summary Judgment, Doc. 69, at pages 14-18).

Grant has the burden to prove he is "otherwise qualified" to perform the essential functions of his job. *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017). Assuming, *arguendo*, Grant was unable to walk his shift, he could not fulfill the essential functions of a JSO and posed an undue hardship and safety risk to the institution.

In 2012, the Center implemented job descriptions for all JSOs based on model descriptions promulgated by the U.S. Department of Labor.[28] A JSO is an "Essential Employee" who must ***frequently stand, stoop, bend, pull, and walk*** and must be able to "***stand/walk throughout the majority of the shift***."[29] A JSO must respond to emergencies, help fellow officers, and safeguard troubled children in his care. If he cannot walk, break up fights, and restrain violent inmates, he jeopardizes the safety of the institution.[30] While there is no evidence that Grant had a disability, he repeatedly claimed he could not safely work as a JSO.[31] By his own admission, he was not qualified for his job.[32]

Grant was also not qualified because he refused to perform the job's most basic administrative requirements. One of Grant's most important duties was to complete Observation Logs to precisely document what each child was doing at specific times. Grant was the only JSO

---

[28] Doc. 69-3 (MSJ Exhibit 1, Watson affidavit), Doc. 69-18 (MSJ Exhibit 16, Shelton affidavit), and Doc. 69-40 (MSJ Exhibit 38, Beasley affidavit).

[29] Doc. 69-33 (MSJ Exhibit 31, Juvenile Supervision Officer essential job functions at HC-215-218).

[30] Doc. 69-3 (MSJ Exhibit 1, Watson affidavit), Doc. 69-18 (MSJ Exhibit 16, Shelton affidavit), and Doc. 69-40 (MSJ Exhibit 38, Grant's falsified Observation Log).

[31] Grant wrote on his job description that he was incapable of meeting the essential functions of his job and needed "light duty." Doc. 69-33 (MSJ Exhibit 31, JSO Essential Job Functions). Grant also admitted on his exception reports that he was slower than his peers and posed a safety threat to the children. Doc. 69-28 (MSJ Exhibit 26).

[32] *See Marsh v. Terra Int'l (Oklahoma), Inc.*, 122 F. Supp. 3d 1267, 1275 (N.D. Okla. 2015), holding that an employer may fire an employee who expresses concern that his disability makes it unsafe for him to perform the essential functions of his job.

who refused to sign a standard agreement to follow the procedures for completing Observation Logs.[33] He eventually signed, but still claims he signed under "*duress*" and was not obligated to follow the Center's policies.[34] Grant's Observation Logs were vital government records that were synced to a designated clock on each floor, but no matter how many times this was explained, he insisted he should be allowed to use his cell phone or other clocks in the facility, and that his supervisors should sync *their* logs with *his* cell phone.[35] Grant was either deliberately obstinate or genuinely unable to understand this essential job function. Either way, he was not qualified to work as a JSO.

## II.
## THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT GRANT'S TERMINATION HAD NOTHING TO DO WITH HIS ALLEGED DISABILITY
(Motion for Summary Judgment, Doc. 69, at pages 2-7 & 18-25).

Even if Grant had established a *prima facie* case of discrimination, he cannot survive summary judgment unless he presents evidence that the actions taken against him were the result of his disability. To do that, he must show his termination was a pretext:

> Pretext is more than a mistake on the part of the employer; it is a phony excuse. Where a defendant has proffered more than one reason for the challenged action, a plaintiff must address all of the employer's suggested reasons. A court, however, doesn't "sit as a super-personnel department that reexamines an entity's business decisions." It determines "whether the employer gave an honest explanation of its behavior."

*Dunlap v. Refuse Dep't Sanitary Dist.*, No. 3:05-CV-214RM, 2006 WL 1707268, at *5 (N.D. Ind. June 19, 2006)(internal citations omitted). Grant must show <u>clear</u>, <u>objective</u> evidence that a JSO without a disability would not have been fired for the same conduct. He cannot do so.

---

[33] Doc. 69-20 (MSJ Exhibit 18, Robinson deposition at 130:7-131:13) and Doc. 69-40 (MSJ Exhibit 48, Beasley Affidavit). By law, Grant was required to document the activity of children on an Observation Log that conforms to very specific requirements. However, Grant refused to follow those requirements.

[34] Doc. 69-5 (MSJ Exhibit 3, Grant deposition at 242:4-246:5); Doc. 69-22 (MSJ Exhibit 20, Grant's Response to Request for Admission No. 19).

[35] Doc. 69-40 (MSJ Exhibit 38, Beasley Affidavit). As noted in Harris County's summary judgment, Grant was not even supposed to have a cell phone in a secure facility.

There is no dispute that Grant was fired because of his extensive misconduct. Harris County's summary judgment establishes that on October 29, 2013, Grant falsified his Observation Log, altered his supervisor's report to cover up his falsification, and used an unauthorized electronic device within a secure facility. That was the <u>second time in a year</u> Grant was caught falsifying a government document to conceal his dereliction of duty, and his <u>eighth</u> disciplinary infraction in 20 months. Grant had already been given a "<u>final warning letter</u>" advising him that he would be terminated if he engaged in any further misconduct.[36]

Harris County's summary judgment also presents undisputed evidence that Grant often propped his bare feet on tables, slept at work, neglected children in his care, harassed co-workers, and prevented others from doing their jobs. No employee would expect to keep his job under these circumstances, and as Harris County shows in its summary judgment, Grant was given more chances than other employee to comply with basic, common sense rules necessary to protect the safety of vulnerable children.[37] It is indisputable that Grant was fired for misconduct—not because of any alleged disability.

## III.
## CONCLUSION

There is no issue of material fact that Grant is not disabled, never requested a reasonable accommodation, admitted he did not need an accommodation, and refused to engage in an interactive process with Harris County. There is also no issue of material fact that Grant was terminated for egregious and well-documented misconduct. Grant's own testimony forecloses on

---

[36] Harris County presented the Court with this lengthy disciplinary history and even included an excerpt from one of Grant's falsified documents and a surveillance photo showing how Grant typically spent his nights—with his feet propped up, ignoring the children in his care, and sometimes sleeping.

[37] Harris County provided a representative sample of 10 termination letters for other JSOs during this period. Each lost his or her job for conduct that was far less egregious than Grant's.

every element of his ADA claim, and there is no possibility of there being any material issue of fact to present to a jury.

Faced with this overwhelming, undisputed evidence, Grant completely ignored the Court's order to respond to summary judgment last month. Harris County respectfully requests that the Court reconsider the denial of summary judgment and dismiss Grant's claims, with all costs taxed to Plaintiff.

Respectfully submitted,

OF COUNSEL:
VINCE RYAN
HARRIS COUNTY ATTORNEY

_____
SETH HOPKINS
Assistant County Attorney
Texas Bar No. 24032435
Federal (Southern District) No. 2043155
1019 Congress Plaza, 15th Floor
Houston, Texas  77002
(713) 274-5141 (telephone)
(713) 755-8924 (facsimile)
Seth.Hopkins@cao.hctx.net

## CERTIFICATE OF SERVICE

I certify that on the 19th day of March, 2018, a true and correct copy of the foregoing document was delivered to all counsel of record via the CM/ECF system and served by electronic notice to all parties of record.

_____
Seth Hopkins